I'm sorry, this afternoon. Case number 19-3334, Western Missouri, United States v. Jamerl Wortham. And 19-3431, Western Missouri, United States v. Anthony Williams. Very well, Mr. Moss, we'll hear from you first. May it please the Court. Mr. Wortham is serving a 60-year sentence. This appeal challenges his convictions for aiding and abetting carjacking and distribution of PCP along with their related 924C convictions. The relief he seeks in this case would reduce his sentence from six to four decades. He raises two issues on appeal. Issue 1 challenges the sufficiency of those convictions. Issue 2 challenges the duplicity of his convictions for PCP distribution. I'd first like to address Issue 1. We concede that this Court's review is quite deferential. But the Court does review the evidence de novo in the light most favorable to the government. Although the government is given the benefit of all reasonable inferences, it is not given the benefit of all conceivable inferences. Inferences must be supported by a sufficient evidentiary basis. Conjecture is not enough. A couple of things I'd like the Court to keep in mind as the Court approaches this issue. Primarily, the government's case was circumstantial. There's no dispute that Mr. Wortham's conviction of both of these offenses involves aiding and abetting liability. With regard to that liability, the evidence that he committed an act to facilitate the offense and evidence that he intended to commit that offense is primarily circumstantial. This Court's review does not, importantly, involve credibility determinations. The issue we raise on appeal does not require this Court to second-guess evidence or inferences noted below. We don't challenge the testimony of any of the victims or the police officers. We don't ask this Court to re-weigh the evidence. Despite the deferential standard, we believe the evidence was sufficient because a conviction must be supported by substantial evidence. We do not believe the government satisfied that burden in this case. As I noted earlier, Rosemond requires liability for aiding and abetting to establish proof of an act that facilitated the offense and, secondly, an intent to commit that offense. We rely on Davis and the equivocation theory of Davis, which establishes that if evidence is equally strong to infer innocence as to infer guilt, an acquittal is warranted. Though there has been some dispute in this Court regarding whether Davis is still good law, in 2015 in White, this Court resolved that controversy and held that Davis and the equivocation theory applies exclusively to the evaluation of the government's evidence. And that is what we challenge in this case as well. Essentially, what Mr. Wortham's position is, is that the evidence presented by the government was sufficient to establish his aiding and abetting the kidnapping as well as the robbery convictions. But we contend there's no additional evidence that distinguishes his participation in those offenses versus his participation in those offenses plus a carjacking, plus distribution of PCP. So, although this Court's evidence standard review is deferential, there's simply no direct evidence that Mr. Wortham intended or participated in an act to facilitate the carjacking offense or to facilitate the distribution of PCP offense. What about Mr. Wortham's actions with regard to the carjacking, his actions after the other two have taken over the car? If those actions are what the jury is looking at, would that be enough for them to infer sort of with hindsight what his intent had been? Well, Judge Kelly, we do acknowledge that, based on Rosemond, that the jury was entitled to rely upon his actions and conduct following the carjacking. Certainly, that is relevant to establish his intent. So, we do concede that part, and that is some of the evidence the jury was entitled to consider. However, two things. First of all, we do not believe that would rise to the level of establishing substantial evidence that he was in this from the get-go, that it was something that he wished to bring about. And secondly, I would fall back to the equivocation theory of Davis. There is nothing necessarily about his actions that distinguish his involvement in a carjacking from his involvement in an attempted robbery. So, we believe the evidence is basically the court can view it either way. You could view it in terms of, well, it looks like he was involved in a kidnapping and a robbery. The evidence was sufficient to establish that. But the other inferences the government asks you to draw, those are not inconsistent with Mr. Wortham's argument that those only show his involvement for the kidnapping and the robbery. With regard to the second issue, a couple of things I'd like to point out just as an overview. There is no question in this circuit that a recipient of the PCP distribution is a required element of the offense. That's ahumada. Instruction number 39 in this case only required the jury to find that PCP was distributed, quote-unquote, to another. That instruction did not specify the actual person. More importantly, the court in this case did not provide a standard unanimity instruction. It wasn't given. Instead, the jury was instructed, and this is in quotes specifically, that it should, quote, should try to reach agreement if you can do this without going against what you believe to be the truth because all jurors have to agree on the verdict, end of quote. Now, that's important for two reasons. Number one, it doesn't even mention the word unanimous. And secondly, if you look at the language of that particular instruction, it very easily could be read to allow for a non-unanimous verdict because some jurors might have thought, well, you know what? I kind of think that maybe Mr. Wortham was good for the distribution to victim MM. Other jurors could have said, well, she did not really remember anything, but I think his distribution was sufficient with regard to YC. That's specifically prohibited by the Sixth Amendment and by this court and case law from the Supreme Court. Contrast that instruction with that in instruction number 37, where the court specifically gave a specific unanimity instruction for the Hobbs Act robbery. And the court told the jury, you have to find unanimously that a robbery against this person or this person or both of them. Aren't these instructions jointly submitted? They yes, they were jointly submitted. And I understand the government has argued that Mr. Wortham waived that waived this court's review of that issue. Now, we would argue that waiver does not apply in this case for a couple of reasons. First of all, the one that was actually submitted was not given by the court. The proposed instruction was not given. Now, the language, yes, it was included in the submitted instruction, but the court gave a different instruction than the one that was submitted. But the substance to which you object was in fact given, was it not? And what's present in the original instruction? Yes. With respect to what your argument is directed at, the instructions are identical. With regard to that specific language, yes, Judge Arnold, we would concede that the language is the same. Despite that, however, we still don't believe waiver applies for a couple of reasons in addition to that. First of all, the duplicity that was problematic in this case was not apparent on the face of the instructions. Instead, it was created by the evidence presented at trial. That's Peter Antonio, a 2011 case, talks about that. It's the government evidence that was created. I'm sorry, I think there's a delay. I don't mean to interrupt. I'm sorry. Nevertheless, would your objection be forfeited because you didn't raise it at trial, right? We're conceding plain error review, Judge Arnold. We are conceding plain error review. We don't believe, though, that waiver applies, which the government is contending. The court cannot review this at all. Why does the fact that your last point about the face of the document, why does that avoid waiver? If you submitted the proposal and then never said anything further, what difference does it make how the evidence came in? Well, because it wasn't apparent at that time that that instruction was submitted that there would be a duplicitous problem, that the government would present evidence of distribution actually to two separate victims. And that's Pietrantonio in 2011. The court talks about that. If the government's waiver argument—and again, waiver requires intentional conduct. And our position would be that we can't show that because the problem did not even exist at the time those instructions were submitted. Additionally, if you look at Olano and the other cases on waiver, the unanimous—well, I guess I am into my rebuttal time, so I want to reserve as much of that as I can. But just in concluding, I do want to draw the court's attention to Eagle Elk, a 1987 case from this court that describes that issue as non-waivable. That's from Eagle Elk. Secondly, just last summer, the Supreme Court in Ramos v. Louisiana affirms that and talks about— and holds that unanimity is fundamental to the American scheme of justice. So while we would concede that we're in plain error review, for the reasons we articulate in the brief, we do think this court has authority to review that issue. And I would like to reserve the few minutes I have left for rebuttal. Very well. You may. Mr. Johnson, the court appreciates your willingness to accept the appointment under the Criminal Justice Act. And we'll hear from you next. Please turn on your microphone. Apologize for that. Your Honor, our co-counsel has done an excellent job of laying out the issues in our objection, which we borrowed wholesale from him. The problem we—and we acknowledge we have a problem in that there was testimony and evidence that our client, Mr. Williams, had a blunt that he said, rightly or wrongly, he thought it had PCP. Our objection, Your Honor, is that the evidence indicated or testimony was deduced that he had passed it around to these different women. However, the—only one of them, I believe, said he—she took it. The jury instruction just said anyone. We believe it should have more specifically identified that MM was the one that took it. We believe it was kind of more of a roving instruction that they were able to just say, hey, somebody did it. And I don't think that is correct, as was clearly pointed out by Mr. Wallace. Is it your position that it was to your client that the—there was not sufficient evidence to prove a distribution to YC? Yes, Your Honor. Well, she says that she tried to refuse, but then she smoked it or attempted, but she did not ingest it. So it's a difficult argument, Your Honor. Our position is that I believe it was the—MM is the one that did actually inhale a little bit. But, you know, our—again, distribution doesn't require inhalation. It doesn't require taking into the body. And we understand that this is our—it's the best argument we could put forward on this matter. I know it's challenging. All right. Do you have anything further? No, we had—in our sentencing, we had—and in our objections to the PSR, we had brought up that we objected to the inclusion of the robberies as violent felonies. In preparing the brief, we had determined that that wasn't a viable issue in this particular matter. All right. Does that conclude, Your Honor? Yes, Your Honor. Very well. Thank you for your argument. Mr. Wagner, we'll hear from you. Thank you. May it please the Court, David Wagner for the United States. I'd like to start by addressing the issue that just came up, which is that YC did not actually ingest drugs. I agree that ingestion is not required, but her testimony was, quote, I also refused, however, was forced to take the drug. So in case there's any doubt about whether she actually ingested the drug, I think her testimony shows very clearly that she did. And that was on page 69 of volume 3 of the trial transcript. I'd like to turn then to the issue of waiver. And it's the government's position in this case that the challenge to the jury instruction on PCP distribution was waived because it was jointly proposed by the defendants and by the government. And there's been some question about whether the Sixth Amendment right can be waived. But I think it's important in this area to distinguish, to be clear about what exactly is being waived. The government is not arguing that the defendants waived their Sixth Amendment right to unanimous jury. Instead, we're arguing that the defendants waived their right to appeal the jury instruction. And there's a difference between those two things. I would direct the court to the cases of United States v. Jackson and United States v. Tillman, decided in the government's brief. And that explained that what's being waived is the right to challenge the instruction. We're not arguing that the underlying right that the defendants argue makes the instruction erroneous is waived. We're arguing that the right to appeal the instruction is what's being waived. I noticed that in your joint submissions, the government explicitly reserved the right to make a further proposal depending on what the evidence of trial showed. Isn't that right? That's correct, Judge Arnold. Would it be fair to say that that same courtesy, that same ability ought to be extended at least implicitly to the defendant? Absolutely. And I think that the defendants were free. If the evidence that was adduced at trial showed something that made them question the jury instruction they had proposed to the district court, they would have been free to raise an objection to that proposed instruction. So what does that do to your waiver argument? I don't think it affects the waiver argument at all. Essentially what the defendants did here is that they invited what they now claim to be error with the district court. Because they asked the district court to give this instruction. If they had questions about the accuracy of that instruction after the trial, after the evidence was introduced at trial, it was incumbent upon them to ask the court to fix the instruction. Okay, so your position is that the submission of the instruction in accordance with the pretrial submissions was a matter to a waiver by the defendant. Exactly. Okay, I understand. Thank you. Well, Mr. Wagner, was there any pretrial disclosure, discovery, anything else that showed the defendant that the evidence would be that the distribution of drugs in the car went to the two women? Mr. Moss seems to argue that that was a surprise and therefore they couldn't have waived what they've now forfeited because they didn't even know it was an issue. Judge Colleton, I'm sorry, I do not know the answer to that question one way or another. Okay. I do think, though, that regardless of whether the distribution to both women was shown in the pretrial discovery, the defendants still were given a clear opportunity by the district court to raise any objections that they wanted after the evidence was presented. It would be my position that it was their responsibility to then raise their objection to the district court. I'd also like to address the notion that even if the court were to find that this issue is not waived, I would encourage the court to consider the circumstances in relation to the fourth prong of plain error review. There's a case that we cited in our brief called United States versus Mariano. I believe Judge Colleton wrote the opinion, and it makes the point that even if the right to challenge an instruction can't be waived, there is no miscarriage of justice when the district court gives an instruction that the defendants jointly requested. I think that would apply in this case, even if the court were to go so far as to find a waiver under plain error review. The fact that the defendants invited the district court to give this instruction, then did not raise any objections to it after the evidence was presented, strongly suggests that there was no miscarriage of justice in the case. Turning then, if the court were to find that the challenge to the instruction is not waived, I'd like to address the substance of the instruction itself. It's the government's position that the instruction was not actually erroneous, much less plainly erroneous, which is the standard of review that the defendants concede applies in this case. I'll grant you that is stated in the government's brief, this is a close question in our view. This issue implicates the appropriate quote-unquote unit of prosecution for a drug distribution crime. As the cases cited in the brief show, generally each separate transfer of drugs is a separate offense. But the cases also show that when applying this rule, all the cases involve separate transfers of additional quantities of drugs at distinct times. In this case, of course, the defendants transferred the same blunt, which they asserted had been dipped in PCP, to two people riding in the same car at effectively the same time. Because of the unique circumstances of this case, it was not erroneous to charge and instruct as one offense. Would you then agree under that theory that you do run the risk of a conviction that is split by the jury? Say eight people think it was a distribution by one of the defendants to victim one, and four think it's to victim two. Isn't that a reasonable or a possible result of your theory? Not in this case, I don't believe it is. And that's because the exact same evidence showed distribution to both victims. And I think the jury was presented with a choice. Either two women receive PCP if they believe the women, or no women receive PCP. So it's your view. I thought as I understood the testimony, there was some confusion. One of the victims maybe thought it was a glass pipe. Another one thought it was a blunt. So you're saying that those kinds of differences in the victim's testimony, I guess I'm struggling to see how the proposal of a split verdict wouldn't be possible, given the different type of testimony that was introduced about the smoking by the two victims. Sure, so I'd like to address the differences in the testimony. There's three victims in this case, TJ and YC, who were both kidnapped from the Camry. That's the defendant's car jack. And then MM, who was first kidnapped as she was waiting for an Uber. MM, of course, was intoxicated at the time. She admitted that. She probably lost consciousness for part of the time. She's the one that testified that she remembered smoking something like a glass pipe. And that is, as you point out, different than what TJ and YC testified about. But both TJ and YC, who were not intoxicated at the time, and had clear and consistent memories of the night's events, they both testified specifically that YC and MM were forced to smoke a blunt dipped in PCP. So I think if a jury is looking at that testimony, I grant you it's sort of hard to explain what MM was remembering, but she was not in complete control of her faculties at the time, and it wasn't her fault that she was kidnapped at a point in time when she was particularly susceptible. And the fact that her memory was not as clear as the other two, I don't think would have swayed the jury into thinking that there was discrepancy in the testimony. Well, Mr. Wagner, if we're on plain error review, wouldn't the question be whether there's a reasonable probability that the jury would have acquitted if it had been given the unanimity instruction that the defendant now seeks? Absolutely. And not only that, it's the defendant's burden to show that reasonable probability. And that's a different question, isn't it, than speculating about what the jury might have been thinking under this instruction. In other words, even if the jury might have been thinking of two different people under this instruction, the question on plain error review is whether if they've been given a different instruction, what are they likely to have done? So could you address that? Is there a reasonable probability that they would not have agreed unanimously that there was a distribution to one particular victim? Absolutely not. I don't see any possibility, reasonable or otherwise, that the jury wouldn't have found at least unanimously found that at least one of the women was given PCP. But even if they were, would it be your position that it doesn't matter, that there might have been an unanimous agreement with respect to who the victim was? Well, frankly, Judge Arnold, I'm not entirely sure. What we know is that the recipient of drugs, the identity of the recipient of drugs is not an element of the crime. This court made that point way back in the, I think, Crosby or Crosley, I'm sorry, the exact name is escaping me case. So given that the recipient, the identity of the recipient is not an element, I think it's a very hard question about whether a jury could, half of the jury could find it was given to one woman, half of the jury could find it was given to the other, but the verdict still be unanimous as to all the essential elements of the offense. I think at the very least, what I can say is that would not be plainly erroneous, given the state of the law. I hesitate to tell you it would have been correct if the jury had split that way, but I don't think it would have been clearly erroneous. You don't think what would have been? The situation you proposed, where half of the jurors found it was given to one woman, but half to the other. But what's clearly erroneous got to do with it? You mean plainly erroneous, don't you, Mr. Wagner? I apologize. Yes, plainly erroneous. Because the standard of review here is plain error. Okay, but we have cases that say, well, this wasn't plain error because it wasn't error at all. So even on cases on plain error, we can say it wasn't error. Are you suggesting that that holding would be incorrect? Quite frankly, I struggle with the issue, Judge. So I hesitate to be dogmatic one way or the other. I don't want to say for certain when I'm unsure. All right. Thank you. Mr. Wagner, just one follow-up question. Does your assessment of the plain error analysis change for the two defendants? Do you think that it's different for Mr. Williams than it is for Mr. Worthen, given the aiding and abetting theory that's lingering out there in the count? No, I think it's important to separate those two issues. Whether the jury instruction was correct should apply the same to both defendants, and the court should look separately at whether the evidence was sufficient to support the aiding and abetting counts. And so do you think that the result changes? My guess is your answer is no. But is there a stronger argument for one than the other, given the nature of the evidence, the testimony you've described, and the jury questions that were asked of the court? I don't believe so. I think the evidence about who got the PCP was the same, regardless of the aiding and abetting charge. Just to address that jury question, though, the jury was specifically asking and explicitly asking about count 14, which, of course, is possession of the short-bailed shotgun and furtherance of the PCP distribution crime. I don't think the jury was confused about who got PCP or whether to convict on that count. The instruction specifically referenced count 14, which was the possession of the shotgun. The Senate did not reference count 13, which was the distribution charge. On this issue of duplicity, one thing I would like to point the court to is the court's previous decision in the United States versus Smith from 2018. In that case, it was somewhat different issues. The case involved child pornography receipt and possession and whether the jury was unanimous about attempt or completed offenses. But the court made the point that the duplicity doctrine is concerned about fairness. We're concerned about the fairness to a defendant of the jurors not being unanimous in a conviction. I would suggest that there was no unfairness to the defendants in this case. What we know is that all the jurors agreed that they distributed PCP. I don't think it was clearly wrong or much less clearly wrong to charge it as one crime. And I don't think it was unfair. We pointed out in our brief that even if there was plain error, it did not affect the defendant's substantial rights. I mentioned several minutes ago that I think the waiver issue applies to the fourth prong of plain error review. And there's no miscarriage of justice here. So unless there are any further questions on the jury instruction issue, I'd like to turn in my remaining time to the sufficiency of the evidence. I don't think there's any question that the, well, just to back up, the sufficiency of the evidence, the government needed to prove both that Mr. Wortham took an affirmative act in furtherance of the carjacking and PCP distribution crimes and had the requisite intent. He intended to further those crimes and had the advanced knowledge that the crimes would occur. Mr. Wortham has pointed out that his conviction rests on circumstantial evidence and that's true. But this court has said time and time again that a verdict can rest solely on circumstantial evidence. I don't think there's any question that he took acts to further the carjacking and PCP distribution crimes. I mean, just by virtue of the fact that he supplied the shotgun, he was the one who the evidence showed had the shotgun before the crimes took place that the defendants used to intimidate the women both to steal the car and to force them to take drugs. So just based on that alone, he took acts in furtherance of the crime. And we've listed in our brief several other acts that he took in furtherance of both crimes. So I think the issue really here turns on whether he had the requisite intent. Mr. Wagner, do you also have to factor in that those acts, there were multiple crimes alleged here in the indictment, correct? And so those could have also gone to the kidnapping and to the Hobbs Act, correct? Yes, but the fact that the same evidence indicates or provides the basis for multiple crimes is, I don't think, a problem. I think as long as there's sufficient evidence for the carjacking and distribution crimes, the fact that evidence also supports other crimes, it seems to me does not matter. And perhaps I interrupted you before you got to your intent, because I was interjecting, because I understood that you were saying that that alone was enough. Just the fact that he had the gun was enough. And perhaps I jumped in too quickly. So I'll let you get to your next point on intent. Sure. My point was that the gun was enough for the action. So I want to specifically focus on intent. And with respect to the carjacking crimes, there's numerous facts that support his intent to commit the carjacking. Remember, he was already driving a car that the defendants had stolen that evening. So he had no qualms about stealing cars. And that supports his intent to steal another one. He had already kidnapped one victim, which indicates that he was doing more that evening than just robbing ATMs. I also encourage the court to watch Government's Exhibit 17, which is the video of the carjacking. It shows that the first thing the defendants did is they drove right up behind the victim's car and stopped there. The fact that Mr. Wortham, who was driving, did that indicates that he knew the other defendants were going to steal that car and drive away ahead. Because otherwise, why would he have pulled up directly behind it? It would not make a whole lot of sense. You know, of course, he didn't drive away when he saw the carjacking begin. He followed the Camry as it drove away from the ATMs after his co-defendants had stolen the car. He drove the Camry himself for much of the rest of the night. The very car that they stole, which he says the evidence was insufficient to show he intended to steal it, he personally drove that car for most of the rest of the night. On the issue of the PCP distribution, YC testified that all the men appeared comfortable with forcing the women to smoke. He said they all appeared to be working together. TJ said that Mr. Wortham and CJ, the third unidentified man, did not attempt to stop Williams and they appeared comfortable with what was happening. There's no indication that Mr. Wortham was surprised or objected when the women were forced to smoke drugs. He and the other two men worked together as a team throughout the night. Was Mr. Wortham driving the entire time during the distributions to the two women? Was he the driver of the car? He was, yes. He was the driver of the car for, as far as I can tell, all of the night until they divided up into two cars in the morning. Is there any evidence of him smoking as well or anything that he said during the course of that while he's driving? There's some evidence that the men were smoking PCP at the same time. We also know that earlier in the evening, Mr. Wortham was smoking PCP at his friend Matthew Walker's house and after the distribution happened, still that same night, just later, I guess that night or the morning, he was smoking PCP again at Matthew Walker's house. So he himself was smoking throughout the course of the night. I see that my time is up. Unless the court has any further questions, I would ask the court to affirm. Very well. Thank you for your argument. Mr. Moss, we'll hear from you in rebuttal. Thank you. Could I inquire how much time I have left? I'm not able to see the time. That doesn't look right to me. I believe you were down at three minutes and change, but the clock is showing five something. Maybe the clerk can clarify what's going on with the clock. He got the minute and some odd that Mr. Johnson did not use. The clerk has given you Mr. Johnson's time. You have a generous clerk today, so you have five minutes. Go ahead. All right. Thank you. I'd like to start out with the sufficiency argument regarding the PCP. First of all, I would agree that there is evidence that Mr. Wortham was also smoking PCP, but I don't see how that factors into evidence that he forced either of the two victims to smoke PCP either. It is undisputed. He was driving a vehicle. And really, the government's evidence here is it is speculative. Now, granted, there was an objection to that, but that doesn't change the fact that it is speculative evidence. When the government asks, so did they appear comfortable? And the victims say, yeah, that they appeared OK with that. That's still speculative evidence. And in any event, that by itself is not enough to show an intent to facilitate this offense or any action to facilitate the offense. Also, with regard to the sufficiency, I do think there is a difference in how this applies to either Mr. Williams, the co-defendant, or Mr. Wortham. The government is advocating for an all-or-nothing approach here. They're suggesting that, well, either the jury would have found that PCP was distributed to both victims or neither one. While that might apply to Mr. Williams, it certainly does not apply to Mr. Wortham, whose conviction is premised exclusively on aiding and abetting liability. I'd like to also clarify, and there was a question regarding the victim, M.M., who had no recollection whatsoever of smoking from a blunt. She did recall smoking from a pipe, but that occurred later in the evening after Mr. Wortham and Mr. Williams had separated. And they had gone off in separate cars, and I believe Mr. Wortham was already apprehended at the time that that particular distribution occurred. So there is certainly a basis for the jury viewing the evidence differently as opposed to Mr. Wortham and Mr. Williams. The government also suggests that it's not plain error because a recipient of the distribution is not an element. I'm just going to draw this court's attention to Ahumada. That's cited in the original brief. There is no question a distribution requires that the drugs be given or provided or delivered to a person. Now, Crosby says the government doesn't have to prove the identity of that person, but that's not the same thing as saying that it's not required that the drugs be delivered to a person. It is not a distribution unless those drugs are given to a person. That is an essential element of the offense. So the instruction's failure to specify that definitely constitutes plain error under this court's case law. Additionally, the court... Hold on. On that point, you say it's obvious error under our case law, but what about in the fact pattern where you have two people in a car and the blunt is handed to the two of them? Are you saying that the government could charge two counts and stack the penalties on a defendant in that situation when the defendant just hands the drugs to the two people in the back seat? I think that's kind of more of a gray area, Judge Colleton, but I don't think that's... I thought that was Mr. Wagner's point, that it's a gray area and therefore it's not plain error. Go ahead. The way I understood the court to be saying is if a driver turns around and hands a bag of drugs to a group of people at the same time, yes, that possibly would be one distribution. Those are not the facts we have here. We have here forced distribution sequentially to two separate victims. What if the person turns around and hands it to the person on the back right and then hands some to the person on the back left? This court's case law, those are two distributions. Those are two distributions. What's the best case for that? I cite it in the brief and there's multiple cases talking about the intent of the Controlled Substance Act. They do it in terms of sales. If you sell a drug to one person and then to another person, those are two separate sales. Our position is that the error is definitely plain. The government also draws a distinction between a right to appeal the jury instruction and the unanimity issue. The harm from this instruction is that it allowed a non-unanimous verdict. I don't know how we can separate those particular issues. Technically, it's correct we're challenging the instruction, but in the context of it allowing a non-unanimous verdict. If the court looks at Olano, when they talk about waiver, they talk about an intentional relinquishment of a known right. They say that the case says you should look at the right at stake, whether the defendant personally participated in the waiver, whether there were any procedures followed for the waiver, whether it was an informed and voluntary decision. If the court looks at Olano in the context of understanding waiver is an intentional forfeiture, I don't believe these facts support that, especially considering the importance of the right at stake. One question on that. Your time has expired. What in the record shows that it was a complete surprise to the defense that the evidence would show that the drugs were given to two or three of the women in the car? I would concede the evidence doesn't show, the record does not establish a complete surprise of the defense. But we raise that issue simply to point out if you're talking about waiver, which has to be an intentional relinquishment of rights. There had been no basis for at least at that time, 10 days before trial, no basis for defense counsel to presume that based on the record, much less Mr. Wortham. I would ask the court to really consider this in the context of Mr. Wortham and his ability to waive that right as well. Well, if there was no basis for defense counsel to know about it, then why wasn't it a surprise? I thought you just said there isn't a basis to say it was a surprise. Well, what I'm arguing, Judge, is at the time the instructions were submitted, defense counsel, the record does not suggest or it does not establish that they were talking about two separate victims. So I can't really say that, yeah, here, look, here's defense counsel, he's arguing that he's surprised by this. The record doesn't establish that. I would concede that. Does the Western District of Missouri have an open file discovery policy at the U.S. Attorney's Office? In most cases they do, and I believe that was the case here. So wouldn't that have alerted counsel that the evidence was likely to show that the drugs were distributed to multiple people in the car and therefore the joint instruction would be a waiver of any need for an instruction? Yeah, neither Mr. Wagner nor myself were the trial attorneys, so I can't speak directly to that. But I would point out, at least in Mr. Wortham's statement to the police, the only person he had knowledge of, I believe his statement is limited to MM. He talks about Mr. Williams forcing MM to smoke from the blunt. He does not say anything about YC, so I think it's definitely plausible that that was defense counsel's thinking, but I can't vouch for that necessarily, Judge. All right. Thank you for your argument. Thank you to all counsel. The case is submitted and the court will file an opinion in due course.